# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **PAMELA L. HARRISON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:24-cv-00381** |
| | ) | |
| **AMERICAN AIRLINES, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Pamela L. Harrison ("Dr. Harrison") brings suit against American Airlines, Inc. ("American"), Prospect Airport Services, Inc. ("Prospect"), and John Doe (collectively, "Defendants"). (Doc. No. 14). This case arises out of Defendants' allegedly mistreating Dr. Harrison while providing her wheelchair services and assistance during her travels in May 2023. Dr. Harrison brings negligence, breach of contract, and vicarious liability claims against Defendants for that mistreatment. Before the Court is American's Motion to Dismiss and Motion to Strike (Doc. Nos. 16, 17), which have been fully briefed and are ripe for review (Doc. Nos. 16, 17, 27, 28). For the following reasons, the Court will: grant American's motion to dismiss (Doc. No. 16) as to Dr. Harrison's claim for vicarious liability, to the extent she pleads vicarious liability for her contract claim and to the extent she pleads apparent agency liability, and deny the motion in all other respects; and deny American's motion to strike (Doc. No. 16). The Court will also deny Dr. Harrison's Motion to Ascertain Status (Doc. No. 34) and American's Motion to Dismiss (Doc. No. 10) as moot.[1]

---

[1] The filing of a new operative complaint (Doc. No. 14) ("Complaint") moots American's prior motion to dismiss (Doc. No. 10) based on Dr. Harrison's original complaint (Doc. No.

# I.    BACKGROUND AND FACTUAL ALLEGATIONS[2]

Dr. Harrison is a 71-year-old disabled woman who resides in Tennessee.  (Doc. No. 14 ¶ 1).  On May 1, 2023, Dr. Harrison purchased a plane ticket with American for a May 7, 2023 flight from Nashville, Tennessee to Chicago, Illinois.  (Id. ¶ 9).  The day before her scheduled flight, Dr. Harrison requested wheelchair service and assistance from American from the time she arrived at the Nashville airport to the time she landed in Chicago.  (Id. ¶ 25).  Dr. Harrison made these requests on account of her disability.  (Id. ¶ 2).  American agreed, and charged Dr. Harrison for the services.  (Id. ¶¶ 10; Doc. No. 14-1 at 1).  Dr. Harrison paid a premium for these services.  (Doc. No. 14 ¶ 2).  American later informed Dr. Harrison that it engaged Prospect to provide her wheelchair services prior to her flight.  Id. ¶ 10; see Doc. No. 14-2 at 1).

On May 7, 2023, Dr. Harrison arrived at the Nashville airport for her flight.  (Doc. No. 14 ¶ 14).  There, Dr. Harrison checked her walker, which she needs to ambulate on her own, with her luggage.  (Id.).  Prospect assisted Dr. Harrison to her gate in a wheelchair, but abandoned her once she arrived at her gate.  (Id. ¶¶ 14, 35).  Dr. Harrison's flight, which was scheduled to take off at 4:52 p.m., was delayed into the late evening hours.  (Id. ¶ 14).  During that time, Dr. Harrison was stranded at the gate, with no assistance from Defendants, and without her walker that she needed to ambulate on her own.  (Id.).  Without it, she sat for hours, unable to get up, eat or use the restroom.  (Id.).  Defendants did not provide Dr. Harrison with any assistance with food, water, or

---

1).  See Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co., 2009 WL 2369298, at *3, *3 n.12 (W.D. Tenn. July 30, 2009) ("Courts in this Circuit and others will deny motions to dismiss a complaint as moot after a plaintiff subsequently files an amended complaint.") (citing Pinks v. Lowe's Home Cntrs., Inc., 83 F. App'x 90 (6th Cir. 2003)).

[2] The Court draws the facts in this section from the Complaint (Doc. No. 14) and assumes the truth of those facts for purposes of ruling on the instant motion.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

mobility during the extended flight delay. (Id.). Even when Dr. Harrison contacted, or attempted to contact, American representatives for assistance, they denied her help and ignored her. (Id. ¶¶ 14, 35). Later that evening, Dr. Harrison finally boarded the plane to Chicago. (Id. ¶ 15). On board, she was placed in a seat that did not accommodate her condition, where she could not extend, or materially flex, her legs. (Id.).

Upon landing in Chicago, while still on board the plane, Dr. Harrison experienced ventricular fibrillation, progressing to pulseless electrical activity. (Id. ¶ 16). Emergency medical services responded, shocked her, and transported her to Amita Health Resurrection Medical Center ("Resurrection Medical Center"). (Id.). Once at Resurrection Medical Center, serial, high sensitivity troponins confirmed Dr. Harrison had a myocardial infarction. (Id.). The Resurrection Medical Center discharged Dr. Harrison on May 16, 2023. (Id. ¶ 18). After Dr. Harrison's discharge, she had five or more cardio-pulmonary complications requiring hospitalization. (Id.).

On April 3, 2024, Dr. Harrison filed the instant action against Defendants, alleging negligence, breach of contract, and vicarious liability claims for failing to provide proper wheelchair services and assistance during Dr. Harrison's travel, which she alleges led to her medical events. (Doc. Nos. 1, 14). American has now filed a motion to dismiss the claims against it for failure to state a claim upon which relief can be granted, and moves to strike Exhibit B to the Complaint. (Doc. Nos. 16, 17).

## II. DISCUSSION

American combines two motions within its papers: a motion to dismiss, pursuant to Rule 12(b)(6), and a motion to strike, pursuant to Rule 12(f). (See Doc. No. 17 at 6). The Court will address each motion separately.

A. <u>Motion to Dismiss</u>

American first moves to dismiss all three of Dr. Harrison's claims for failure to state a claim upon which relief can be granted. (Doc. No. 17). The Court will address the parties' arguments as to each claim in turn.

1. <u>Legal Standard</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the complaint must include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" <u>Ryan v. Blackwell</u>, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether the complaint meets this standard, the Court must accept all the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." <u>Doe v. Baum</u>, 903 F.3d 575, 581 (6th Cir. 2018); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678–79 (2009). The Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511 (2002) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)). And "[w]hile the complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" or "a formulaic recitation of a cause of action's elements[.]" <u>Blackwell</u>, 979 F.3d at 524 (internal quotations omitted) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Moreover, in evaluating a motion to dismiss, the Court may consider the complaint and the exhibits attached. <u>Bassett v. Nat'l Collegiate Athletic Ass'n</u>, 528 F.3d 426, 430 (6th Cir. 2008). The Sixth Circuit also permits courts to consider other items in assessing a motion to dismiss, such as "documents attached to a motion to dismiss" that are "referred to in a complaint and [are] central

4

to the claim," "public records, [and] matters of which a court may take judicial notice[.]"[3] Armengau v. Cline, 7 F. App'x 336, 344 (6th Cir. 2001).

## 2. Choice of Law

As an initial matter, the Complaint states that the Court has diversity jurisdiction under 28 U.S.C. § 1332(a). A federal court sitting in diversity jurisdiction "must apply the choice-of-law rules of the forum state" to the state law claims before it. Stone Surgical, LLC v. Stryker Corp., 858 F.3d 383, 389 (6th Cir. 2017); see State Farm Mut. Auto. Ins. Co. v. Norcold, Inc., 849 F.3d 328, 331 (6th Cir. 2017) (choice-of-law rules of the forum state determine what substantive law to apply). Tennessee is the forum state. Accordingly, the Court must determine the proper substantive state law to apply to Dr. Harrison's negligence and breach of contract claims under Tennessee's choice of law rules.[4]

### a. Substantive State Law Governing Negligence Claim

The Court must first apply Tennessee's choice of law rules to Dr. Harrison's negligence claim. For tort claims such as negligence, Tennessee has adopted the "most significant relationship" approach. Montgomery v. Wyeth, 580 F.3d 455, 459 (6th Cir. 2009); see Hataway

---

[3] Both parties attach or reference additional materials outside the pleadings in their briefing. American attaches to its memorandum copies of twelve court cases (Doc. Nos. 17-1–17-12), and Dr. Harrison refers to an American website link (Doc. No. 27 at 9 n.36). Setting aside that American unnecessarily attached its supportive authorities to its briefing, pursuant to Armengau, the Court may consider these materials external to the Complaint in evaluating American's motion to dismiss because they are all either matters of public record or matters this Court can take judicial notice of. See Armengau, 7 F. App'x at 344; see also Nieman v. NLO, Inc., 108 F.3d 1546, 1554 (6th Cir. 1997) (courts can take matters of public record into account when evaluating a motion to dismiss) (internal citation omitted).

[4] The Court will only evaluate the choice-of-law question for Dr. Harrison's first two claims, because her third claim, vicarious liability, is improper. See infra, Section II.A.5. For the reasons explained below, see id., the Court will apply the state law that governs Dr. Harrison's negligence claim to her theories of vicarious liability.

5

v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992). Under this approach, "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." Hataway, 830 S.W.2d at 59 (citing Restatement (Second) of Conflict of Laws §§ 6, 145, 146, and 175). "Tennessee adopted this position 'because generally the law of the state where the injury occurred will have the most significant relationship to the litigation.'" Montgomery, 580 F.3d at 459 (quoting Hataway, 830 S.W.2d at 59). "Thus, the most significant relationship 'provides a 'default' rule whereby trial courts can apply the law of the place where the injury occurred when each state has an almost equal relationship to the litigation.'" Montgomery, 580 F.3d at 459 (quoting Hataway, 830 S.W.2d at 59). Courts consider four factors in determining which state has the most significant relationship to the litigation: "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered." Montgomery, 580 F.3d at 459–60 (citing Hataway, 830 S.W.2d at 59 (internal citation omitted)).

Both Dr. Harrison and American fail to fully analyze these factors, instead agreeing that the place of the injury and incident indicates Tennessee law applies. (See Doc. No. 17 at 11–12; Doc. No. 27 at 6). While the parties do not fully analyze the Hataway factors, the Court must do so here. On the first factor, the place where the injury occurred, American and Dr. Harrison agree that Dr. Harrison's injuries occurred in Tennessee. (See Doc. No. 17 at 11–12; Doc. No. 27 at 6). However, the Complaint is not so clear. On one hand, Dr. Harrison may have been injured for the first time when she was abandoned at her gate for hours, "unable to get up, eat or use the restroom," and ignored by American representatives when she asked for assistance. (Doc. No. 14 ¶ 14). On the other, Dr. Harrison alleges various injuries that occurred after her arrival in Illinois. Dr.

6

Harrison alleges that, upon landing in Illinois, she experienced: ventricular fibrillation (Doc. No. 14 ¶ 16); pulseless electrical activity (id.); a myocardial infarction (id.); and at least five more hospitalizations for cardio-pulmonary complications caused by prolonged stasis (id. ¶ 18). Accordingly, the first Hataway factor counsels that either Tennessee or Illinois law should apply to Dr. Harrison's negligence claim.[5] See Montgomery, 580 F.3d at 459–60.

The second factor is the place where the conduct causing injury occurred. Again, American and Dr. Harrison suggest that the conduct that caused Dr. Harrison's injuries all occurred in Tennessee. (See Doc. No. 17 at 11–12; Doc. No. 27 at 6). This time, the Court agrees. While Dr. Harrison alleges that being stuck in an inadequate seat during the flight contributed to her injuries (Doc. No. 14 ¶¶ 15, 17), the rest of the Complaint's allegations state that the conduct that led to Dr. Harrison's injuries occurred at the Nashville airport. For example, Dr. Harrison alleges that, in the airport: Defendants abandoned her in the wheelchair for "hours upon hours" where she could not get up and move on her own (id. ¶¶ 14, 15); ignored and denied her pleas for assistance (id. ¶¶ 14, 35); and placed her into a seat on the plane that did not accommodate her condition (id. ¶ 15). Because the majority of the conduct that caused Dr. Harrison's injuries occurred in Tennessee, the Court finds the second factor indicates that Tennessee law should apply to the negligence claim. See Montgomery, 580 F.3d at 459–60.

The third and fourth factors suggest the same. The third factor, the "domicile, residence, nationality, place of incorporation and place of business of the parties," Montgomery, 580 F.3d at 459–60, leans towards applying Tennessee law. According to the Complaint, Dr. Harrison is a resident of Tennessee (Doc. No. 14 ¶¶ 1, 3), and both American and Prospect routinely conduct

---

[5] The Court need not decide which substantive law is most appropriate here, given all other factors weigh in favor of applying Tennessee substantive law to Dr. Harrison's negligence claim.

business in Tennessee (although they are incorporated in other states). (Id. ¶¶ 4, 5). While the Complaint does not allege any information of this nature pertaining to John Doe, all other information in the Complaint points to Tennessee as the state that the named parties have in common. (See id. ¶¶ 1, 3–5). As to the fourth factor, the place where the relationship between the parties is centered, see Montgomery, 580 F.3d at 459–60, all allegations in the Complaint suggest the parties arranged Dr. Harrison's flight to leave from Tennessee (Doc. No. 14 ¶ 9), coordinated for and performed the use of wheelchair services in Tennessee (id. ¶¶ 10, 14), and prepared Dr. Harrison to board her flight in Tennessee (id. ¶ 15). Based on these allegations, the third and fourth factors both advise the Court to apply Tennessee law to Dr. Harrison's negligence claim. In balancing all four Hataway factors together, Tennessee is the state where the parties have the most "equal relationship" to the litigation. Hataway, 830 S.W.2d at 59. Accordingly, the Court agrees with Dr. Harrison and American that it should apply Tennessee substantive law to Dr. Harrison's negligence claim.

b. Substantive State Law Governing Breach of Contract Claim

The Court must next determine the applicable state substantive law for Dr. Harrison's breach of contract claim. Under Tennessee law, "'[i]n the absence of a manifestation of contrary intention, the parties are presumed to have contracted pursuant to the laws of the state in which the contract was entered into.'" U.S. v. Republic Ins. Co., 775 F.2d 156, 160 (6th Cir. 1985) (quoting Moody v. Kirkpatrick, 234 F. Supp. 537, 540 (M.D. Tenn. 1964) (internal citation omitted)). While American cites to the correct standard for determining the substantive law that governs the contract claim, it does not apply it; rather, it merely states that "Tennessee substantive state law should apply to this action." (Doc. No. 17 at 11–12). Dr. Harrison does the same. (Doc. No. 27 at 6 (applying Tennessee's tort choice of law analysis to determine "Tennessee substantive law

8

should apply to this cause of action")). Nevertheless, the Court must properly apply these choice of law principles here.

In reviewing the Complaint, the Court cannot identify any manifestation of an intention between the parties to apply substantive contract law of a specific state (see generally Doc. No. 14). See Republic, 775 F.2d at 160. Absent this intention, Tennessee law presumes that the parties have contracted to the laws of the state "in which the contract was entered into." Id. Here, the Complaint contains no allegations definitively stating where the contract was entered into. (See generally Doc. No. 14; see also id. ¶ 2, ¶ 2 n.1). Without such allegations, the best inference the Court can make is that the parties formed the alleged contract in Tennessee, where Dr. Harrison resides and where she received wheelchair services and assistance. (Doc. No. 14 ¶¶ 1, 3, 10, 14). Considering this, that the parties do not contest that Tennessee substantive state law applies to this action, (Doc. No. 17 at 11–12; see Doc. No. 27 at 6), and that the parties apply Tennessee law in their arguments on Dr. Harrison's breach of contract claim, (see Doc. No. 17 at 14–17; Doc. No. 27 at 10–11), the Court will apply Tennessee substantive law to Dr. Harrison's breach of contract claim for the purposes of this motion.[6]

### 3. American's Motion to Dismiss Negligence Claim

Having determined the substantive state law to apply to Dr. Harrison's claims, the Court moves to the merits of American's motion to dismiss. American first contends that Dr. Harrison's negligence claim must be dismissed because: (1) American had no duty of care to Dr. Harrison;

---

[6] Dr. Harrison suggests that the contract she, in part, relies on in the Complaint could change as discovery progresses. (See Doc. No. 14-1). The Complaint states that, as related to the alleged contract at issue, "[t]o the extent a more thorough contract or different contract applies, this contract is in the possession of the adverse party." (Doc. No. 14 ¶ 2 n.1). Should a contract different from the one alleged in the Complaint be produced during this litigation that the parties agree is controlling, its terms may impact the choice-of-law analysis for the contract claim moving forward. See infra, Section II.A.4.a.

9

and (2) American's duty, as pled, "fails to stand independent of the alleged contract" between it and Dr. Harrison.  (Doc. No. 17 at 12–13).  Dr. Harrison disagrees, asserting that Defendants' alleged misconduct supports a common law claim for negligence.  (Doc. No. 27 at 7).  The Court will address American's two arguments below.

a.  Whether American Owed Dr. Harrison a Duty of Care

Under Tennessee law, "[i]n order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: '(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause.'"  Giggers v. Memphis Hous. Auth., 277 S.W.3d 359, 364 (Tenn. 2009) (citing McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995)); see also Naifeh v. Valley Forge Life Ins. Co., 204 S.W.3d 758, 771 (Tenn. 2006).  The parties only dispute the first element of Dr. Harrison's negligence claim, whether American owed Dr. Harrison a common law duty of care.  Dr. Harrison alleges that American owed her "a duty of care to provide reasonable and non-negligent wheelchair assistance at all times from when [Dr. Harrison] arrived at [Nashville airport] to when she boarded her plane."  (Doc. No. 14 ¶ 20). American disagrees, contending it did not have a duty of care to Dr. Harrison because it was "not foreseeable" that Dr. Harrison would suffer the cardiac complications from being "abandoned at the gate."  (Doc. No. 17 at 13).

Ultimately, "whether a defendant owed or assumed a duty of care to a plaintiff is a question of law for the court to decide."  Downs ex rel. Downs v. Bush, 263 S.W.3d 812, 820 (Tenn. 2008). "The first element, that of duty, . . . is the legal obligation of a defendant to conform to a reasonable person's standard of care in order to protect against unreasonable risks of harm."  Giggers, 277 S.W.3d at 364 (citing Burroughs v. Magee, 118 S.W.3d 323, 328–29 (Tenn. 2003)); McClung v.

10

Delta Square Ltd. P'ship., 937 S.W.2d 891, 894 (Tenn. 1996)).  Where a plaintiff alleges a defendant owed it a common law duty of care, as Dr. Harrison alleges here, "[i]n assessing whether a duty is owed in a particular case, courts apply a balancing approach, based on principles of fairness, to identify whether the risk to the plaintiff was unreasonable."  Burroughs, 118 S.W.3d at 329 (citing Turner v. Jordan, 957 S.W.2d 815, 818 (Tenn. 1997)).  A "risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm."  McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995).  Courts consider several factors in determining whether a risk is an unreasonable one that gives rise to a duty of care, including:

> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

Id. (citing Restatement (Second) of Torts, §§ 292, 293 (1964)).

In weighing this balancing test, the Court agrees with Dr. Harrison that American owed her a duty of care under these circumstances.  Let's look at the first factor, foreseeability, first.  "The foreseeability of the harm is a key factor in the equation because, in general terms, '[f]oreseeability is the test of negligence.'"  Downs, 263 S.W.3d at 820 (internal citation omitted).  "A risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party . . . owed a duty is probable."  Id. (internal citation and quotations omitted).  "Foreseeability does not require awareness of a precise type of injury, but rather an awareness of a general character of injuries similar to those

suffered by the plaintiff." Dillard v. Vanderbilt University, 980 S.W.2d 958, 960 (Tenn. Ct. App. 1998).

The Court finds that the foreseeability consideration weighs in Dr. Harrison's favor. It was reasonably foreseeable to American that if it did not provide reasonable and non-negligent wheelchair assistance, Dr. Harrison could suffer medical complications like those she experienced upon landing in Chicago (Doc. No. 14 ¶¶ 16–18). See Downs, 263 S.W.3d at 820. American's prior notice of the probability of such risk is described at various points in the Complaint. For instance, Dr. Harrison alleges that she is the type of individual that American knows needs special services, in that: she is a "71-year-old, disabled" individual (Doc. No. 14 ¶ 1); and American "provides [wheelchair] services to customers like [Dr. Harrison] because" of "risk to disabled customers like [Dr. Harrison]" if those services are not provided during travel (id. ¶ 11). Dr. Harrison further alleges that despite her condition, she was "stranded at the gate, in her wheelchair with no assistance offered or provided" by American. (Id. ¶ 14). She alleges that during that time, she "sat, unable to get up, eat or use the restroom for hours upon hours" and American representatives ignored and denied her requests for assistance. (Id. ¶¶ 14, 35). Further, Dr. Harrison alleges that after hours in her wheelchair with no assistance, she was "placed on a plane, into a seat that did not accommodate her condition." (Id. ¶ 15). Given these circumstances, it would have been reasonably foreseeable to American that a disabled woman in her seventies would experience *some* severe medical complications if she: (1) utilized services for disabled individuals during travel; (2) could not move for hours prior to and onboard her flight; and (3) did not get assistance from airline personnel, despite asking for it. See Dillard, 980 S.W.2d at 960 (the exact injury need not be reasonably foreseeable, but only a general character of injuries); see also Downs, 263 S.W.3d at 820 (an injury is foreseeable if party who owed a duty had notice that danger to the

individual was probable). This is sufficient to establish foreseeability here. See Dillard, 980 S.W.2d at 960.

American provides no argument as to the other factors courts consider in determining whether it subjected Dr. Harrison to unreasonable risk such it owed her a common law duty, conceding that all others fall in Dr. Harrison's favor. See McCall, 913 S.W.2d at 153. However, because the existence of a common law duty is a question of law, the Court will independently evaluate the remaining factors. See Downs, 263 S.W.3d at 820. As to the second factor, the possible magnitude of potential harm or injury, see McCall, 913 S.W.2d at 153, the Court agrees with Dr. Harrison that the possible magnitude of harm or injury is "quite large" here. (Doc. No. 27 at 9). Taking the allegations in the Complaint as true and viewing them in Dr. Harrison's favor, Dr. Harrison, a disabled, 71-year-old woman, sought to use wheelchair assistance because of her disability. (Doc. No. 14 ¶¶ 1, 2). The possible magnitude of harm or injury should she not get the assistance she needs during travel is significant.

The third, fourth, and fifth factors, on balance, also weigh in favor of finding that American owed Dr. Harrison a duty of care. The third factor—the importance or social value of the activity engaged in by American—weighs in favor of finding American had a duty of care to Dr. Harrison. See McCall, 913 S.W.2d at 153. As Dr. Harrison points out, American providing wheelchair assistance to disabled individuals during their travels is undoubtedly an important social activity, both for the individuals who need such services and for the public. (See Doc. No. 27 at 9). The fourth factor, the "usefulness of the conduct" by American, is neutral. The Court understands that American's alleged conduct (not assisting Dr. Harrison while providing wheelchair assistance and putting her on an inadequate seat on the plane) is probably useful to American, in that ignoring Dr. Harrison's needs likely allowed American employees to tend to other customer needs, of which

13

there are surely many. However, the amount of time and resources saved by not assisting Dr. Harrison is equalized by the harm that could come to American for engaging in such conduct. By ignoring the assistance needs of disabled passengers like Dr. Harrison, American exposes itself to, among other disadvantages: injured customers that raise complaints, disruptions during travel, and legal action.

The fifth factor the Court consider is "the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of the alternative conduct." McCall, 913 S.W.2d at 153; see Burroughs, 118 S.W.3d at 332 (evaluating these factors as a single fifth factor). In this context, the "alternative, safer conduct" would have been for American to, at minimum, respond to Dr. Harrison's requests for assistance prior to boarding. To be sure, the cost or burden associated with assisting Dr. Harrison would be greater than ignoring her while she utilized the wheelchair services. Still, those costs and burdens are quite low considering the relative usefulness and safety to Dr. Harrison had American done so, which are both quite high. Had American provided *any* wheelchair assistance when Dr. Harrison requested it, those services would have allowed her to possibly move, stand up, or use the restroom before her flight. (See Doc. No. 14 ¶ 14). All of these activities would have been useful to Dr. Harrison, and safer in terms of mitigating her health risks. Balancing the five factors together, the Court finds American subjected Dr. Harrison to an unreasonable risk of harm, and therefore owed Dr. Harrison a duty of care while providing her with wheelchair assistance. See McCall, 913 S.W.2d at 153.

The non-binding district court case American relies on to support its assertion that there is no duty of care here, Glass v. Northwest Airlines Inc., 761 F. Supp. 2d 734 (W.D. Tenn. 2001), is of no moment. In Glass, on summary judgment, a passenger contended that the airline owed it

14

duty to provide a wheelchair to him within ten minutes of his arrival. Id. at 744. The Glass court disagreed. (Id.). The court reasoned the airline had no duty to the passenger because it was not foreseeable that the passenger would leave the gate area without a wheelchair himself after waiting only ten minutes. Id. at 744–46. The Glass court supported this conclusion by emphasizing that the passenger's harm was not foreseeable to the airline, given that after only a few minutes, he left the gated area and used his walker on the escalator, injuring himself. Id. The Glass court further reasoned that the passenger had not provided any alternative conduct the defendant should have participated in, and sought to impose a duty of care to provide a wheelchair "three times as fast as [defendant's] contractual duty" under a related contract. Id. at 745.

Setting aside a material distinction between the instant case and Glass, that the Glass court ruled on a summary judgment motion, Glass is still not analogous. Here, Dr. Harrison does not attempt to impose a harsh duty of care requiring services within 10 minutes, like the passenger in Glass did. Rather, she contends American had a duty of care of "reasonable" and "non-negligent" assistance. (Doc. No. 14 ¶ 20). Dr. Harrison alleges this duty given that she did not get assistance for *hours*, not minutes like in Glass. (Id. ¶¶ 1, 14–15, 17). Further, there are no allegations that Dr. Harrison attempted to take matters into her own hands in a manner than was completely unforeseeable to American, like the passenger in Glass did. Rather, Dr. Harrison *could* not do so because she was stuck in her wheelchair, unable to move. (Id. ¶ 14). Moreover, the Court has no contract before it, like the Glass court did, that sheds light on reasonable expectations of assistance under these circumstances. See Glass, 761 F. Supp. 2d at 745. Given the various differences between Glass and the instant case, including the factual discrepancies and the different stages of litigation, the Court does not find Glass controlling here.

Should there remain any doubt, American owing Dr. Harrison a duty of care here is supported by general public policy considerations. In addition to considering the amount of risk the defendant exposed the plaintiff to, "considerations of public policy are crucial in determining whether a duty of care existed in a particular case." Burroughs, 118 S.W.3d at 329 (citing Bain v. Wells, 936 S.W.2d 618, 625 (Tenn. 1997)). Such considerations are made in light of the general purposes of tort law, being:

> the imposition of a legal duty reflects society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's act or conduct. Indeed, it has been stated that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.

Bradshaw v. Daniel, 854 S.W.2d 865, 870 (Tenn. 1993) (internal citation and quotations omitted). Again, the parties fail to fully account for public policy considerations of imposing a common law duty under these circumstances. (See Doc. No. 17 at 12–13; Doc. No. 27 at 7–9; Doc. No. 28 at 1–2). Still, the Court finds such considerations further warrant a finding that American had a common law duty to Dr. Harrison. There is, of course, a societal policy and social requirement that disabled individuals are given a duty of care from individuals providing services to accommodate their needs. See Bradshaw, 854 S.W.2d at 870. To rule otherwise would be illogical, given the various accommodations society provides to disabled individuals like Dr. Harrison. Further, it would also be cruel. It would subject an already-disadvantaged population to further harm from mere carelessness. Accordingly, the Court finds public policy considerations support that American owed Dr. Harrison a duty of care.

  b.  Whether Dr. Harrison's Negligence Claim is Rooted in Contract

American also summarily argues that Dr. Harrison's negligence claim is deficient because it is improperly rooted in her breach of contract claim. (Doc. No. 17 at 12–13). American asserts

16

this is evidenced by her briefing as to her breach of contract claim and negligence claim mirroring one another. (See Doc. No. 28 at 2). Dr. Harrison argues that her negligence claim is not subsumed by her contract claim, given American has a common law duty here. (Doc. No. 27 at 9). Again, the Court agrees with Dr. Harrison.

"The gravamen of an action, or the real purpose of an action, is determined by the basis for which damages are sought." Green v. Moore, 2001 WL 1660828, at *3 (Tenn. Ct. App. Dec. 28, 2001) (citing Bland v. Smith, 277 S.W.3d 377, 379 (Tenn. 1995)). Where a plaintiff asserts multiple claims, "courts must ascertain the gravamen of each claim, not the gravamen of the complaint in its entirety." Benz-Elliot v. Barrett Enters., LP, 456 S.W.3d 140, 148 (Tenn. 2015). To ascertain the gravamen of a claim, courts employ a two-step approach: "first, [courts] must consider the legal basis of the claim," and second, "consider the type of injuries for which damages are sought." Benz-Elliot, 456 S.W.3d at 151.

The parties do not account for the steps outlined in Benz-Elliot, but the Court will review them here. Turning to the first step, the legal basis of the claim, the Court finds Dr. Harrison's negligence claim is rooted in a violation of a legal duty owed to her, not a contractual one. See Green, 2001 WL 1660828, at *3. Undeniably, American is right that some of the allegations in the Complaint conflate Dr. Harrison's breach of contract and negligence claims, (see, e.g., Doc. No. 14 ¶ 10 (American "agreed to provide non-negligent wheelchair service[.]"), ¶ 31 (discussing vicarious liability as to both contract and tort claim)), and Dr. Harrison alleges that similar conduct constituted breaches under both claims. However, as American's supporting case law demonstrates, that is not what is controlling. See Yinghong Mach. Int'l Ltd. v. Wholesale Equip., Co., 2014 WL 12887673, at *4 (W.D. Tenn. Oct. 17, 2014) (citing Green, 2001 WL 1660828, at *3). It matters not how much Dr. Harrison's tort and contract claims overlap, so long as, in viewing

17

Dr. Harrison's negligence claim, it is rooted in tort. See Benz-Elliot, 456 S.W.3d at 148. Here, it is. Dr. Harrison alleges that American owed her a duty of care "to provide reasonable and non-negligent wheelchair assistance at all times from when [Dr. Harrison] arrived at [the Nashville airport] to when she boarded her plane." (Doc. No. 14 ¶ 20). Her negligence claim is based on a violation of that duty, in that American "breached this duty by leaving [Dr. Harrison] stranded for hours in her wheelchair with no assistance" and by "denying [her] assistance when requested." (Id.). Accordingly, the first step to determine the gravamen of the negligence claim suggests it is rooted in tort law.

In evaluating the second Benz-Elliot step, the type of injuries for which damages are sought, the result is the same. See Benz-Elliot, 456 S.W.3d at 151. Dr. Harrison's negligence claim seeks damages for the injuries she sustained upon landing in Chicago, including the ventricular fibrillation progressing to pulseless electrical activity (Doc. No. 14 ¶ 16), a myocardial infarction (id.), and five more "cardio-pulmonary complications," (id. ¶ 18). For those injuries, Dr. Harrison seeks economic damages, including "medical expenses," and non-economic damages, including "pain and suffering and mental anguish." (Id. ¶ 34). These personal injuries and corresponding requests for relief are the exact sorts of circumstances that negligence law permits recovery. See Meals ex rel. Meals v. Ford Motor Co., 417 S.W.3d 414, 419–20 (Tenn. 2013) (personal injury plaintiff may recover for economic and non-economic damages, including medical expenses, and pain and suffering); Laxton v. Orkin Exterminating Co., Inc., 639 S.W.2d 431, 434 (Tenn. 1982) (damages permitted for mental anguish and personal injury from negligence claim). Further, it is a general rule under Tennessee law that non-economic damages like "pain and suffering" and "mental anguish" are not recoverable for a breach of contract. See Kindred v. Nat'l Coll. of Bus. & Tech., Inc., 2015 WL 1296076, at *11 (Tenn. Ct. App. Mar. 19, 2015) ("In

18

Tennessee, the general rule is that there can be no recovery of damages for mental anguish occasioned by a breach of contract."). Accordingly, the type of injuries for which Dr. Harrison seeks damages for demonstrates that her negligence claim is rooted in tort.[7]

American's desire to make the alleged contract between the parties dispositive of Dr. Harrison's negligence claim does not properly reflect Tennessee law. Ultimately, as Tennessee courts have opined,

> Where a contractual relationship exists between persons and at the same time a duty is imposed by or arises out of the circumstances surrounding or attending the transaction, the breach of the duty is a tort. In such a case, the tortious act, and not a breach of the contract is the gravamen of the action; the contract is the mere inducement creating the state of things which furnishes the occasion for the tort.

Mullins v. Golden Circle Ford, Inc., 1986 WL 3937, at *7 (Tenn. Ct. App. Apr. 1, 1986) (internal citation and quotations omitted). That is exactly what Dr. Harrison alleges here—the contract between her and American merely "induce[d] creating the state of things which furnishe[d] the occasion for the tort." Id. The Complaint reflects this, as her negligence claim is rooted in a breach of American's duty of care to her, and she seeks damages for injuries stemming from that violation. See Benz-Elliot, 456 S.W.3d at 151.

Accordingly, the Court finds American had a duty of care to provide reasonable, non-negligent wheelchair assistance to Dr. Harrison during her travels that arose from the parties' relationship to one another. Because American does not contend that any other element of Dr.

---

[7] With this in mind, American's reliance on Yinghong is entirely unpersuasive. In Yinghong, the plaintiff alleged both a conversion claim and a breach of contract claim. Yinghong, 2014 WL 12887673, at *3–4. However, the plaintiff did not request any relief for the conversion claim, nor did it provide factual allegations supporting the conversion claim. Id. at *4. The court, understandably, dismissed the plaintiff's conversion claim because the plaintiff "fail[ed] to assert facts that show there was a duty separate and apart from contractual obligations." Id. Given this, Yinghong is irrelevant to the facts here.

19

Harrison's negligence claim is inadequately pled (see Doc. No. 17 at 12–13), the Court need not further evaluate it here. The Court will deny American's motion as to this claim.

### 4. American's Motion to Dismiss Breach of Contract Claim

American next asserts Dr. Harrison's breach of contract claim should be dismissed for three reasons: first, because Exhibit A to the Complaint is not a contract; second, American did not breach any alleged contract; and third, Dr. Harrison cannot show damages from any alleged breach. (Doc. No. 17 at 14–16). Dr. Harrison disagrees, stating that she has sufficiently alleged all of the elements of her breach of contract claim.[8] (Doc. No. 27 at 10). The parties agree that, to the extent there is a contract, it is governed by Tennessee law (Doc. No. 14 ¶ 23). See supra, Section II.A.2.b. To establish a claim for breach of contract under Tennessee law, a plaintiff must prove: "(1) the existence of an enforceable contract, (2) the nonperformance amounting to a breach of contract, and (3) damages caused by a breach of contract." BancorpSouth Bank, Inc. v. Hatchel, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006); see also Life Care Ctrs. Of Am., Inc. v. Charles Town Assocs. Ltd. P'ship, LPIMC, Inc., 79 F.3d 496, 514 (6th Cir. 1996) (reciting the elements for a breach of contract claim under Tennessee law). The Court will address the parties' arguments as to each of these elements below.

#### a. Element 1: Existence of a Contract

The first issue American raises is whether Dr. Harrison has alleged a valid contract. On this point, American argues that Exhibit A is not a contract. (Doc. No. 17 at 15). American contends that Exhibit A "does not present any contractual obligations[,]" in that it "does not

---

[8] Dr. Harrison also addresses arguments American made in its prior motion to dismiss (Doc. No. 10) regarding the applicability of Tenn. R. Civ. P. 10.03. (See Doc. No. 27 at 11). Because those arguments are not at issue in this motion (see Doc. No. 17; Doc. No. 28 at 3), the Court will not address them here.

explicitly describe the terms of the contract, the alleged nonperformance, [or] the alleged damages." (Id.). Dr. Harrison does not explicitly contest that Exhibit A is not a contract, instead arguing that she has "pled that the specific terms and conditions of the contract are within the exclusive control" of American and, regardless, has alleged contractual terms. (Doc. No. 27 at 11; see id. at 10–12).

For the avoidance of doubt, the Court agrees with the parties that Exhibit A is not a contract. For a contract to be enforceable, it must be of "sufficient explicitness so that a court can perceive [] the respective obligations of the parties." Higgins v. Oil, Chem. & Atomic Workers Int'l Union, Loc. No. 3-677, 811 S.W.2d 875, 880 (Tenn. 1991) (internal citation omitted). An agreement is not legally enforceable "unless the court c[an] discern what the agreement" is. Id. at 881. As American asserts, and Dr. Harrison concedes, Exhibit A does not tell the Court "what the agreement" is between the parties (see Doc. No. 14-1). See Bassett, 528 F.3d at 430 (the Court may consider exhibits attached to the Complaint and central to Dr. Harrison's claims). While Exhibit A does show that Dr. Harrison made a special service request for wheelchair assistance from the Nashville to Chicago airports on May 6, 2023, it is not sufficiently explicit to constitute a contract, in that it contains no terms such that the Court can perceive the respective obligations of the parties (see Doc. No. 14-1). See Higgins, 811 S.W.2d at 880. For instance, Exhibit A contains no terms delineating Dr. Harrison's payment for services, the extent of the wheelchair assistance, or American's duties in providing that assistance. (See Doc. No. 14-1). Accordingly, the Court agrees with American that Exhibit A is not a valid, binding contract that Dr. Harrison may hinge her breach of contract claim on.

However, that is not where the inquiry as to the first element of Dr. Harrison's breach of contract claim ends. Dr. Harrison asserts that, Exhibit A aside, she has also pled facts sufficient

to establish a contract between the parties. (Doc. No. 27 at 10–11). American ignores this argument based on its incorrect insistence that Dr. Harrison needs to attach the operative contract to the Complaint to survive a motion to dismiss. See Fed. R. Civ. P. 10(c) ("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes"); 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1327, at 762 (2d ed. 1990) (Rule 10(c) is permissive, in that there is "no requirement that the pleader attach a copy of the writing on which his claim for relief or defense is based.").

The requirements for a valid contract under Tennessee law are well-settled. See Higgins, 811 S.W.2d at 879. These include:

> it must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.

Id. And, of course, the contractual terms must be sufficiently explicit such that a court can discern the parties' respective obligations. See id. at 880. Taking all of the allegations in the Complaint as true and in Dr. Harrison's favor, Dr. Harrison has sufficiently alleged that a contract existed between her and American.

The Complaint contains sufficiently explicit contract terms to support Dr. Harrison's contract claim here. As to the meeting of the minds, Dr. Harrison alleges that: "[o]n May 6, 2023, [Dr. Harrison] requested wheelchair service from [American]," to which "American [] accepted" and "charged [Dr. Harrison] for this service." (Doc. No. 14 ¶ 10; see id. ¶ 25). The Complaint further states that American "contractually agreed to assist [Dr. Harrison] with anything that she needed to maintain her health and dignity at all times prior to her flight." (Id. ¶ 14). Further, Dr. Harrison alleges that, "[p]rior to [Dr. Harrison's] flight, American [] confirmed it would provide the special assistance requested by [Dr. Harrison] and would assist Dr. Harrison with her

wheelchair" "from the time [Dr. Harrison] arrived at the airport until she arrived in Chicago, Illinois." (Id. ¶¶ 12, 25). These allegations, taken together, demonstrate that American and Dr. Harrison had a meeting of the minds as to the contractual terms: American would provide Dr. Harrison wheelchair services and assistance that would maintain her health and dignity from the time she arrived in the airport to landing in Chicago. (Id. ¶¶ 10, 12, 14, 25). The Complaint also shows that the contract was supported by sufficient consideration, in that American charged for its services, and Dr. Harrison "paid a premium" for them. (Id. ¶¶ 2, 10). Further, American does not argue, and the Court has no reason to suspect, that these terms are against public policy, or were made under "fraud or undue influence." Higgins, 811 S.W.2d at 879.

If American has control over the pertinent document, as Dr. Harrison contends, it could have introduced it here for the Court's consideration. See Weiner v. Klais and Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997), overruled on other grounds by Swierkiwica v. Sorema N.A., 534 U.S. 506 (2002) ("[A] defendant may introduce certain pertinent documents if the plaintiff fails to do so."). But it did not, running the risk that Dr. Harrison's purportedly "legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." Weiner, 108 F.3d at 89. American's failure to attach the operative document is at its own peril. The Court finds Dr. Harrison has alleged facts sufficient to establish that the parties entered a contract for wheelchair services and assistance from the time of Dr. Harrison's arrival at the airport to the time she arrived in Chicago.

b. Element 2: Breach

American argues that, even if the Court finds a contract between the parties, Dr. Harrison still has not sufficiently pled that American materially breached the contract because it provided Dr. Harrison the wheelchair services contracted for. (Doc. No. 17 at 15). Dr. Harrison disagrees,

23

asserting that the Complaint alleges that American breached the contract "by failing to provide her with assistance during her travel after abandoning her at the gate, and by ignoring her repeated requests for help once she was at the gate[.]" (Doc. No. 27 at 10). The Court must determine whether American's failure to provide Dr. Harrison with assistance constitutes a material breach of the parties' contract. (See Doc. No. 14 ¶ 25). To determine whether a breach is material, courts may consider the following factors:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Forrest Const. Co., LLC v. Laughlin, 337 S.W.3d 211, 225–26 (Tenn. Ct. App. 2009) (citing Restatement (Second) of Contracts § 241). The first, second, and fourth factors are particularly relevant here. In evaluating these factors, "[t]he first factor addresses the reasonable expectations of the parties," and "[t]he second factor addresses adequate compensation in the event of breach." Kova Bristol Tenn 1894, LLC v. Bristol Preservation, LLC, 2020 WL 1286385, at *2 (E.D. Tenn. Mar. 18, 2020). As to the fourth factor, courts consider whether a breaching party cures by "avoid[ing] additional defective performance" and by "correct[ing] its defective work." McClain v. Kimbrough Constr. Co., Inc., 806 S.W.2d 194, 198 (Tenn. Ct. App. 1990).

All three of the relevant factors weigh in Dr. Harrison's favor. On the first factor, American's failure to provide Dr. Harrison with the assistance that she contracted for deprived her of the benefit that she reasonably expected under the terms of their agreement. See Kova Bristol Tenn 1894, 2020 WL 1286385, at *2. American agreed to provide Dr. Harrison with "all assistance she needed from the time she arrived at the airport until the time she arrived in Chicago, Illinois," (Doc. No. 14 ¶ 25), including "assist[ing] [Dr. Harrison] with anything that she needed to maintain her health and dignity at all times prior to her flight." (Id. ¶ 15). American denied Dr. Harrison the contracted-for benefit of assistance when it "fail[ed] to provide [Dr. Harrison] with assistance during her travel from Nashville to Chicago after abandoning her at the gate," (id. ¶ 25) and ignored and denied her requests for help (Id. ¶¶ 14, 25). See Forrest, 337 S.W.3d at 225. As to the second factor, Dr. Harrison can be adequately compensated for the damages she sustained from that breach through at least compensatory damages, as the Complaint requests. (Doc. No. 14 at 9 ¶ a (requesting "[a]ll compensatory damages allowable")). On the fourth factor, American cannot, nor did it, avoid additional nonperformance or act to correct its defective performance. See McClain, 806 S.W.2d at 198. While American could have cured its breach, given Dr. Harrison asked "various [American] representatives" for help, (Doc. No. 14 ¶ 14), they ignored her every time. See Forrest, 337 S.W.3d at 226. Accordingly, Dr. Harrison has sufficiently pled facts establishing American materially breached the contract when it failed to provide Dr. Harrison assistance throughout her travels.

c. Element 3: Damages

As to the last element of Dr. Harrison's breach of contract claim, American briefly argues that Dr. Harrison cannot show that she sustained damages from its breach of the contract because American did not reasonably foresee them. (Doc. No. 17 at 16). Dr. Harrison disagrees. (Doc.

25

No. 27 at 11). Tennessee law permits the recovery of "all damages which are the normal and foreseeable results of a breach of contract." Morrow v. Jones, 165 S.W.3d 254, 259 (Tenn. Ct. App. 2004). "Such damages include reasonably foreseeable consequential and incidental damages." Holladay v. Speed, 208 S.W.3d 408, 415 (Tenn. Ct. App. 2005) (citing Morrow, 165 S.W.3d at 259). Incidental damages are "those damages . . . which the law itself implies or presumes [to be] the immediate, direct or proximate result, or such as necessarily results from the injury, without reference to the special character, condition or circumstances of the plaintiff." Wills Elec. Co., Inc. v. Mirsaidi, 2001 WL 1589119, at *4 (Tenn. Ct. App. Dec. 13, 2001) (quoting Black's Law Dictionary (6th ed. 1990)). By contrast, consequential damages do "not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." Id. (quoting Black's Law Dictionary (6th ed. 1990)). When evaluating whether damages were reasonably foreseeable between the contracting parties, Tennessee courts have opined:

> As a general rule, sometimes expressed in statutory enactments, the damages to which one party to a contract is entitled because of a breach thereof by the other are such as arise naturally from the breach itself, or such as may reasonably be supposed to have been within the contemplation of the parties at the time of making the contract as a probable result of a breach thereof, or, as sometimes stated, such as were reasonably foreseeable and within the contemplation of the parties at the time they made the contract.
>
> Conversely, damages which do not arise naturally from a breach of the contract, or which are not within the reasonable contemplation of the parties, are not recoverable. The promisor is not required to compensate the injured party for injuries which the promisor, when he made the contract, had no reason to foresee as the probable result of his breach.

Baker v. Riverside Church of God, 453 S.W.2d 801, 809 (Tenn. Ct. App. 1970) (internal citation and quotations omitted). Consistent with these principles, a party who fails to "fulfill a contract cannot be held liable for remote, contingent and uncertain consequences, or for speculative or

26

possible results which may have ensued from his breach." Maple Manor Hotel, Inc. v. Metro Gov't of Nashville & Davidson Cnty., 543 S.W.2d 593, 598 (Tenn. Ct. App. 1976) (citing Baker, 453 S.W.2d at 809).

The Court agrees with Dr. Harrison that the damages she sustained from her medical events were reasonably foreseeable between the parties. See Holladay, 208 S.W.3d at 415. The Complaint provides for factual circumstances showing that damages flowing from Dr. Harrison experiencing medical complications were within the contemplation of Dr. Harrison and American at the time of contracting. See Baker, 453 S.W.2d at 809. For example, the Complaint states: Dr. Harrison is a 71-year-old, disabled woman (Doc. No. 14 ¶ 1); because of her disability, she contracted for wheelchair services from the time she arrived at the airport until she landed in Chicago (id. ¶¶ 2, 10); and those services included terms that required American to "assist [Dr. Harrison] with anything that she needed to maintain her health and dignity" prior to her flight. (Id. ¶ 14). Further, the Complaint states that American contracts with customers like Dr. Harrison for wheelchair services because of the "risk to disabled customers" during travel. (Id. ¶¶ 10–11). These allegations, taken together as true and in Dr. Harrison's favor, show that it would have been reasonably foreseeable to American that Dr. Harrison would experience cardiac events absent performance of the contract. See Baker, 453 S.W.2d at 809. Given this, the damages Dr. Harrison alleges flow from American's breaches were within American's contemplation at the time of contracting. See id.; see also Wills Elec. Co., 2001 WL 1589119, at *4 (consequential damages do not need to flow directly from breach). That Dr. Harrison, a 71-year-old woman with a disability, would suffer medical complications after not receiving contracted-for assistance on

27

account of that disability, is not a "remote, contingent or uncertain consequence" of American's breach. See Maple Manor Hotel, 543 S.W.2d at 598.[9]

The Court finds Dr. Harrison has pled facts sufficient to show that the damages alleged from her medical injuries were reasonably foreseeable between her and American. Accordingly, she has satisfied the third element of her breach of contract claim. American's motion as to Dr. Harrison's breach of contract claim will be denied.

### 5.  American's Motion to Dismiss Vicarious Liability Claim

Dr. Harrison's third cause of action, vicarious liability, asserts American is vicariously liable for Prospect's conduct through two separate legal doctrines: agency liability, and apparent agency liability. (Doc. No. 14 ¶ 31). American contends Dr. Harrison's vicarious liability claim fails for two reasons: (1) vicarious liability is not a distinct cause of action; and (2) Dr. Harrison has not pled sufficient factual support establishing a principal-agent relationship between American and Prospect such that agency liability applies. (Doc. No. 17 at 17). Dr. Harrison does not directly respond to American's first argument. (Doc. No. 27 at 12–15). Instead, she contends that she "seeks to" plead agency liability "as a theory of imputation of liability against" American for the other causes of action in the Complaint, and she has also successfully pled apparent agency liability. (Id. at 13). Because "[i]t is well-understood, and the parties appear to agree, that vicarious liability is not a distinct cause of action, but rather a theory of imputation[,]" to the extent Dr. Harrison raises a separate claim for vicarious liability, American's motion to dismiss it will be

---

[9] American, yet again, improperly relies on Glass in support of the contrary (Doc. No. 17 at 17). Aside from the various factual differences between this case and Glass making it inapplicable here, see supra, Section II.A.3, in Glass, the court discusses whether the passenger's actions were foreseeable considering his *negligence* claim. Glass, 798 F. Supp. 2d at 748. Considering this, American's contract arguments based on the Glass court's reasoning require no further discussion.

granted.  Lambert v. Central Transp., Inc., 2008 WL 11389189, at *3 n.3 (M.D. Tenn. Apr. 24, 2008).

a.  Agency Liability

The Court will address American's second argument as to agency liability separately for Dr. Harrison's contract and negligence claims.  To the extent Dr. Harrison alleges that American is vicariously liable for Prospect's or John Doe's conduct as related to her contract claim against Defendants, that is also improper.  (See Doc. No. 14 ¶ 31 ("Plaintiff looked to American Airlines to provide the services contracted for through American Airlines, regardless of whether performed by American Airlines or its agent or apparent agent, Prospect. If John Doe performed some or all of the services contracted for by American Airlines, American Airlines is vicariously liable for the actions of this agent or apparent agent."); Doc. No. 27 at 13 (Dr. Harrison suggests she seeks to apply vicarious liability to "the person appointed or controlled by American . . . [who] breached the contract with [Dr. Harrison] by abandoning [Dr. Harrison] at the gate.").  Vicarious liability is "a doctrine whereby the principal is liable for the tortious acts of its agent to the extent such acts were performed in the course of the principal's business."  Starr Printing Co., Inc. v. Air Jamaica, 45 F. Supp. 2d 625, 633 (W.D. Tenn. 1999) (citing Tennessee Farmers Mut. Ins. Co. v. American Mut. Liab. Ins. Co., 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992)).  It does not apply to contract claims.  See id. at 634 (holding vicarious liability inapplicable because plaintiff did not allege defendants committed any tortious acts, but only issues sounding in contract).  Accordingly, American's motion will be granted to the extent Dr. Harrison asserts vicarious liability as pertaining to her contract claims against Defendants.

However, Dr. Harrison may still pursue a theory of agency liability in support of her negligence cause of action, so long as that theory is sufficiently pled.  American contends that Dr.

29

Harrison has not sufficiently pled vicarious liability in the context of an agency relationship because she has "not stated any facts that demonstrate any degree" of American's control over Prospect. (Doc. No. 17 at 19). In support, American again cites to an inapplicable case applying the principal-agency test in the context of a motion for a directed verdict. See Edwards v. Int'l Harvester Co., 688 S.W.2d 456, 459 (Tenn. Ct. App. 1985) (affirming dismissal of defendant where the record contained no evidence of a principal-agent relationship). Dr. Harrison contends she has sufficiently pled her theory of agency liability, arguing that American itself identified Prospect as its agent and that the Complaint alleges that Prospect "was acting within the course and scope of its engagement" for performing wheelchair services for American. (Doc. No. 27 at 13).

"At its core, an agency relationship is one in which 'one person acts for or represents another.'" Davis v. Covenant Presbyterian Church, 2014 WL 2895898, at *3 (Tenn. Ct. App. June 23, 2014) (quoting White v. Revco Disc. Drug Ctrs., 33 S.W.3d 713, 723 (Tenn. 2000)). When an agency relationship exists, the principal "authorizes the agent to act for the principal's benefit but at the same time retains the right to control the agent's conduct." Id. (internal citation and quotations omitted). To successfully plead that a principle is liable for the acts of another, a plaintiff must allege: "(1) that the person causing the injury was the principal's agent and (2) that the person causing the injury was acting on the principal's business and acting within the scope of his or her employment when the injury occurred." Tucker v. Sierra Builders, 180 S.W.3d 109, 120 (Tenn. Ct. App. 2005) (internal citation omitted).

Although scant, the allegations in the Complaint are sufficient to support Dr. Harrison's theory of agency liability. To be sure, the Complaint contains various legal conclusions that cannot support Dr. Harrison's agency liability allegations. These include, among others, allegations that:

Prospect "was acting within the course and scope of its engagement with American" when it provided "negligent services;" and American "is vicariously liable for the conduct of its agent, Prospect" under the doctrine of *respondeat superior* (Doc. No. 14 ¶ 31). See Twombly, 550 U.S. at 555 (complaint needs more than a "formulaic recitation of" elements or "labels and conclusions"). Still, Dr. Harrison alleges additional factual support that American and Prospect acted in a principal-agent relationship when providing her wheelchair assistance. For example, the Complaint states that: American engaged Prospect to provide the wheelchair services at issue, which Prospect accepted (Doc. No. 14 ¶ 10; Doc. No. 14-2); Prospect acted within the scope of that engagement by providing Dr. Harrison wheelchair services (Doc. No. 14 ¶¶ 18, 35); and Prospect caused Dr. Harrison's injury, in part, by abandoning her while providing those wheelchair services (id.). At this stage of litigation, taking them as true and in Dr. Harrison's favor, Dr. Harrison has pled facts sufficient to establish that American and Prospect entered a principal-agent relationship for services such that agency liability may apply to her negligence claim. See Tucker, 180 S.W.3d at 120; see also Scheuer, 416 U.S. at 236. American's motion as to Dr. Harrison's failure to plead agency liability, as related to her negligence claim, will be denied.

b. Apparent Agency Liability

The Court next turns to Dr. Harrison's second theory of vicarious liability: apparent agency liability. Notably, American did not argue in its opening brief that Dr. Harrison failed to sufficiently plead apparent agency, instead relying solely on its agency liability arguments. (Doc. No. 17 at 17–19). Ordinarily, this would result in American waiving any argument as to this issue. See Swain v. Comm'r of Soc. Sec., 379 F. App'x 512, 517 (6th Cir. 2010) (affirming district court's finding that a claimant waived arguments not raised in his merits brief). However, this rule typically applies to protect the non-movant from arguments raised for the first time in a reply brief,

to which it has no opportunity to respond. C.f. United States v. Jerkins, 871 F.2d 598, 602 n.3 (6th Cir. 1989) ("It is impermissible to mention an issue for the first time in a reply brief because the appellee then has no opportunity to respond.") (internal citation and quotations omitted). But here, Dr. Harrison fully briefed the apparent agency issue on her own in her response brief. (Doc. No. 27 at 14). This gave American proper opportunity to respond in its reply. (Doc. No. 28 at 4). Because the parties have fully briefed the apparent agency issue, the Court finds there is no waiver such that it may address the parties' arguments. C.f. Winnett v. Caterpillar, Inc., 553 F.3d 1000, 1007 (6th Cir. 2009) (waiver rules "ensure fair and evenhanded litigation by requiring parties to disclose legal theories early enough in the case to give an opposing party time" to respond).

Apparent agency is distinct from the agency liability just discussed. See supra, Section II.A.5.a. "Apparent agency is essentially agency by estoppel; its creation and existence depend upon such conduct by the apparent principal as will preclude him from denying another's agency." White v. Methodist Hosp. S., 844 S.W.2d 642, 646 (Tenn. Ct. App. 1992). To establish apparent agency, a plaintiff must show: "(1) the principal actually or negligently acquiesced in another party's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment." Mechs. Laundry Serv. v. Auto Glass Co. of Memphis, 98 S.W.3d 151, 157 (Tenn. Ct. App. 2002) (quoting Methodist Hosp., 844 S.W.2d at 646) (internal citations omitted). Further, "[a]pparent authority is established through the acts of the principal rather than those of the agent or through the perception of a third party." Boren ex rel. Boren v. Weeks, 251 S.W.3d 426, 433 (Tenn. 2008).

American contends Dr. Harrison has not sufficiently plead the second element of apparent agency, in that Dr. Harrison relies on "mere perception, rather than actual facts," to show

32

knowledge of Prospect's apparent authority. (Doc. No. 28 at 4). Dr. Harrison disagrees, asserting that the Complaint states enough factual allegations to support all three elements of her apparent agency claim. (Doc. No. 27 at 14). The Court agrees with American that the Complaint contains no alleged facts demonstrating Dr. Harrison's knowledge and belief that the apparent agent, Prospect, possessed authority to render her wheelchair services that American promised to provide. See Mechs. Laundry Serv., 98 S.W.3d at 157. It is true that the Complaint states that Dr. Harrison "has been informed by a designated representative of American [] that it engaged Prospect [] to provide wheelchair services" and that "Prospect accepted the engagement." (Doc. No. 14 ¶ 10). However, the Complaint is devoid of any allegations demonstrating that American's actions gave Dr. Harrison knowledge at the time she received her wheelchair services that Prospect would be acting as American's agent while providing the services. (See generally Doc. No. 14).

In fact, Exhibit B to the Complaint demonstrates that Dr. Harrison did not have knowledge of who provided her the wheelchair services even months after the instant events occurred. As Exhibit B demonstrates, Dr. Harrison's counsel emailed an American representative on January 20, 2024, requesting "the names of the individuals responsible for transport of Dr. Harrison" to her gate, as well as "the full name of their employer." (Doc. No. 14-2 at 2). According to Exhibit B, it is not until January 25, 2024 that Dr. Harrison's counsel learned that Dr. Harrison received wheelchair service "from vendor Prospect[.]" (Id. at 1). Given the only information in the Complaint demonstrates Dr. Harrison did not have knowledge that Prospect provided the wheelchair services at the time they occurred, the Complaint does not sufficiently allege the second element of apparent agency. See Mechs. Laundry Serv., 98 S.W.3d at 157. Accordingly, American's motion will be granted as to Dr. Harrison's theory of apparent agency liability.

6. American's Motion to Dismiss Punitive Damages Relief

American's final Rule 12(b)(6) argument pertains to Dr. Harrison's request for punitive damages. American contends that the allegations of its wrongdoing in the Complaint "do not approach the extremely high threshold required to sustain a claim of punitive damages." (Doc. No. 17 at 20). Dr. Harrison does not engage with this argument, instead asserting that "dismissal of the remedy of punitive damages prior to discovery is disfavored as long as" Dr. Harrison has pleaded claims that, "if successful, could serve as the basis for recovery of punitive damages." (Doc. No. 27 at 15).

"In a diversity action," "the propriety of an award of punitive damages for the conduct in question" is a question of state law. Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 278 (1989). As described above, see supra, Section II.A.2, Tennessee law controls as to both of Dr. Harrison's claims here. Under Tennessee law, "punitive damages may be awarded" in civil actions when there is "clear and convincing proof that the defendant has acted either 'intentionally, fraudulently, maliciously, or recklessly.'" Rogers v. Louisville Land Co., 367 S.W.3d 196, 211 n.14 (Tenn. 2012) (quoting Goff v. Elmo Greer & Sons Constr. Co., 297 S.W.3d 175, 187 (Tenn. 2009)) (discussing standard in reference to breach of contract claim); see Khozhiev v. Clements Truck & Farm, LLC, 2023 WL 11760949, at *3–4 (E.D. Tenn. Feb. 21, 2023) (applying same standard to negligence claim). A claim for punitive damages "cannot survive if a plaintiff only requests such damages in a prayer for relief without supporting the pleading with factual content that, if proven, would warrant punitive damages." Khozhiev, 2023 WL 11760949, at *3 (internal citation and quotations omitted).

The Court has found no support for Dr. Harrison's contention that dismissal of claims for punitive damages at this stage is "disfavored." Nor has Dr. Harrison cited to cases conclusively

34

establishing this. (Doc. No. 27 at 15). Nonetheless, the Court finds that she has sufficiently pled facts that, if proven, may entitle her to punitive damages. See Khozhiev, 2023 WL 11760949, at *3. In contending otherwise, American again fails to account for the breadth of the allegations in the Complaint that pertain to Dr. Harrison's request for punitive damages. (See Doc. No. 17 at 20). Dr. Harrison alleges facts that American acted, at the very least, recklessly as to its duties under contract and tort law such that punitive damages may be warranted. See Rogers, 367 S.W.3d at 211 n.14. For example, the Complaint asserts that American: provided Dr. Harrison with "no assistance with food, water or mobility during the extended flight delay" (Doc. No. 14 ¶ 14); "denied" Dr. Harrison help after she "contacted, or attempted to contact, various [American] representatives" (id.); "ignor[ed]" her "request for assistance" (id. ¶ 35); and "placed" her "into a seat" on the plane that "did not accommodate her condition" where she "could not extend, or materially flex, her legs." (Id. ¶ 15). Should Dr. Harrison successfully obtain clear and convincing evidence that these things occurred, a jury could find American recklessly disregarded its contractual duty to provide Dr. Harrison assistance during this time, and its duty of care to provide Dr. Harrison with reasonable and non-negligent wheelchair services. See Goff, 297 S.W.3d at 187; see also Edwards v. Southwest Airlines Co., 2020 WL 433343, at *4 (S.D. Ohio Jan. 28, 2020) (referring to case where airline employee failed to provide wheelchair accommodation at a layover, resulting in the plaintiff's injury, as "more egregious" behavior than at issue there, where the airline allowed a child to board without parental supervision). Further, as Dr. Harrison notes, while not controlling here, courts in this district have denied motions to dismiss on this topic relying on even less factual support. See Shoals Techs. Grp., LLC v. Prysmian Cables & Sys. USA, LLC, 2024 WL 2097230, at *2 (M.D. Tenn. May 9, 2024) (denying motion to dismiss remedy of punitive damages, stating that at that time, the court could not "determine the

35

appropriate remedies and Plaintiff has pleaded [tort and unjust enrichment] claims that, if successful, could serve as the basis for recovery of punitive damages"). Given the factual support for punitive damages in the Complaint, and the early stage of this case, American's motion as to Dr. Harrison's request for punitive damages will be denied.

B. Motion to Strike

The Court now turns to American's motion to strike Exhibit B to the Complaint, pursuant to Rule 12(f). (Doc. No. 17 at 21). Exhibit B to the Complaint contains email correspondence between, among others, Dewayne Jackson, a Claims Analyst for American, and C.J. Gideon, Dr. Harrison's counsel. (Doc. No. 14-2). The email correspondence shows discussion about the facts of this case prior to Dr. Harrison filing suit. (See id.). In those communications, Jackson informs Dr. Harrison's counsel that Dr. Harrison received wheelchair services from "vendor Prospect[.]" (Id. at 1). American moves to strike Exhibit B of the Complaint under Rule 12(f). (Doc. No. 17 at 21). Dr. Harrison opposes. (Doc. No. 27 at 16–18).

1. Legal Standard

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of the motion [to strike] is to 'avoid the expenditure of time and money that must arise from litigating spurious issues dispensing with' them early in the case." Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co., 783 F.3d 1045, 1050 (6th Cir. 2015) (quoting Kennedy v. City of Cleveland, 797 F.2d 297, 305 (6th Cir. 1986)). Such motions, however, "are viewed with disfavor and are not frequently granted." Id. at 1050 (citing Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir. 1953)). Indeed, a "motion to strike should be granted only when the pleading to be [stricken] has no possible relation to the controversy." Parlak v. U.S.

36

Immigration and Customs Enforcement, 2006 WL 3634385, at *1 (6th Cir. Apr. 27, 2006) (citing Brown, 201 F.2d at 822). Further, courts generally do not strike portions of pleadings unless they are prejudicial to the moving party, EEOC v. FPM Grp., Ltd., 657 F. Supp. 2d 957, 965–66 (E.D. Tenn. 2009), or contain language that is extreme or offensive. Bellew v. Sullivan Cnty., TN, 2020 WL 728810, at *1 (E.D. Tenn. Jan. 3, 2020) (citing Garrett v. Shelby Connor Maddux & Janer, 425 F.3d 836, 841 (10th Cir. 2005), Talbot v. Robert Matthews Distrib. Co., 961 F.2d 654, 655 (7th Cir. 1992), and Alvarado-Morales v. Digital Equip. Corp., 843 F.2d 613, 617–18 (1st Cir. 1988)).

### 2. The Merits of American's Motion to Strike

American contends the communications in Exhibit B "concerning potential settlement negotiations" would be "easily misconstrued" as showing American and Prospect having a principal-agent relationship, given Dr. Harrison did not attach any agreement between Defendants confirming as much, nor did she provide "all other communications" to justify this assertion. (Doc. No. 17 at 21–22). In support, American relies on Estate of Larrimer v. Medical Mut. of Ohio, 2007 LEXIS 73931 (S.D. Ohio Oct. 3, 2007), where the court granted the plaintiffs' motion to strike emails from the administrative record that were unnecessary for the administrative review process and provided no probative value regarding the agency's decision to deny the plaintiffs' claim. Id. at *4–7. Dr. Harrison opposes American's motion, contending Exhibit B supports her assertion that Prospect served as American's agent, and is relevant in light of American's insistence to the contrary. (Doc. No. 27 at 16–18).

This motion requires little discussion. American fails to establish that Exhibit B is "redundant, immaterial, impertinent, or scandalous" such that it should be stricken here. Fed. R. Civ. P. 12(f). As a threshold matter, American does not assert whether Exhibit B is "redundant,

immaterial, impertinent, or scandalous," such that a Rule 12(f) motion would be appropriate here. (See Doc. No. 17 at 21–22). Regardless of the grounds American moves to strike under pursuant to Rule 12(f), its motion fails. First, Dr. Harrison's reliance on Exhibit B to demonstrate American and Prospect had a principal-agent relationship for the purposes of providing her wheelchair services is not redundant, but rather serves in support of the few allegations Dr. Harrison could make on this topic at the pleading stage. This is evidenced by American's continued (incorrect) insistence that Dr. Harrison has not adequately pled the existence of that principal-agent relationship. (See Doc. No. 17 at 17–19, 21–22). Second, the Court cannot say that Exhibit B has no possible relation to the controversy, particularly because it focuses on the relationship between American, Prospect, Dr. Harrison and the wheelchair services at issue. See Parlak, 2006 WL 3634385, at *1. The relationship between American and Prospect as to these services relates to Dr. Harrison's negligence claim, her theory of vicarious liability, and her request for punitive damages. (See Doc. No. 14 ¶¶ 10, 14, 31, 35).

Last, Exhibit B is not prejudicial, nor does it contain extreme or offensive language. To the extent American contends Exhibit B is misleading as to the relationship between American and Prospect, Dr. Harrison will still need to offer proof to support her factual allegations that American is vicariously liable for Prospect's conduct at summary judgment. See Saulsberry v. FedEx Exp., 2013 WL 596061, at *1 n.3 (W.D. Tenn. Jan. 15, 2013) (Complaint allegations "are not evidence from which a party may demonstrate a genuine issue of material fact for purposes of summary judgment.") (citing Behrens v. Pelletier, 516 U.S. 299, 309 (1996) (quoting Fed. R. Civ. P. 56)). How American expected Dr. Harrison to obtain a copy of an agreement between American and Prospect for the relevant services prior to discovery, as it contends she must have done for Exhibit B to be proper, escapes this Court. Further, the Court sees no language in Exhibit B, nor

does American identify any, that is extreme or offensive in a manner that warrants striking it from the Complaint. See Bellew, 2020 WL 728810, at *1 (collecting cases). Rather, the language used between the individuals in Exhibit B is plain and ordinary discussion regarding an impending lawsuit. (See Doc. No. 14-2).

Moreover, American's reliance on Estate of Larrimer, another non-binding, unpublished district court case, is misplaced for various reasons. Of most importance is that in Estate of Larrimer, the plaintiffs moved to strike portions of the administrative record. Estate of Larrimer, 2007 LEXIS 73931, at *4. With the entire administrative record before it, the court in Estate of Larrimer could properly evaluate the probative value of the material the plaintiffs moved to strike, including whether it had any relation to the controversy. Id. at *4–7. Here, American moves to strike portions of the Complaint that it contests the truth of, and directly relate to Dr. Harrison's claims and theories of liability. The Court finds that the circumstances here warrant resolution through the discovery process, rather than premature determinations of the relevancy of such materials. Accordingly, the Court will deny American's motion to strike Exhibit B of the Complaint.

## III. CONCLUSION

For the foregoing reasons, American's Motion to Dismiss (Doc. No. 16) will be granted to the extent the Complaint alleges vicarious liability as a stand-alone claim, to the extent Dr. Harrison asserts vicarious liability as pertaining to her contract claim, and to the extent she pleads apparent agency liability, and will be denied in all other respects. American's Motion to Strike (Doc. No. 16) will be denied, and Dr. Harrison's Motion to Ascertain Status (Doc. No. 34) and American's Motion to Dismiss (Doc. No. 10) will be denied as moot.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE